**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 19 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

ROSALIE GUNNELL,

      Plaintiff-Appellant,

v.

UTAH VALLEY STATE COLLEGE,
formerly known as UTAH VALLEY
COMMUNITY COLLEGE; ROBERT
E. CLARK; RONALD GREENLEAF;
and KARLA HOLM,

      Defendants-Appellees.

No. 96-4155

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:94-CV-352G)**

---

Kenneth B Grimes, Jr., Perkins, Schwobe & McLachlan, Salt Lake City, Utah, for
Plaintiff-Appellant.

Nancy L. Kemp, Assistant Attorney General (Jan Graham, Attorney General, with
her on the briefs), Salt Lake City, Utah, for Defendants-Appellees.

---

Before **EBEL** and **HOLLOWAY**, Circuit Judges, and **BLACK**,[*] District Court
Judge.

---

[*] Honorable Bruce D. Black, District Court Judge, District of New Mexico,
sitting by designation.

**EBEL**, Circuit Judge.

Appellant Rosalie Gunnell ("Gunnell") filed suit against her former employer, Utah Valley State College ("UVSC"), claiming that she was subjected to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 and that she was denied a medical leave of absence in violation of the Family and Medical Leave Act of 1993 ("FMLA"). The district court granted summary judgment for UVSC on the sexual harassment and FMLA claims, and a jury decided against Gunnell on the retaliation claim. Gunnell appeals the grants of summary judgment and the instruction given the jury regarding employer liability in the retaliation context.

We affirm the judgment in favor of UVSC on Gunnell's FMLA claim on the ground that Gunnell's FMLA rights were not violated by terminating her employment. Moreover, because the court's instructions adequately instructed the jury on the law of employer liability for retaliation, we affirm the jury verdict in favor of UVSC on Gunnell's Title VII retaliation claim. However, in light of the Supreme Court's recent decisions regarding employer liability for harassment committed by an employee's supervisor, we reverse summary judgment in favor of UVSC on Gunnell's Title VII sexual harassment claim and remand for further proceedings.

## BACKGROUND

Gunnell was employed as a secretary in UVSC's Plant Operations Department. Her direct supervisor was Director of Maintenance/Custodial Services Robert Clark ("Clark"). Gunnell also did some work for the Chief of Campus Police, Robert Greenleaf ("Greenleaf").

In April 1993, Gunnell complained to Karla Holm ("Holm"), UVSC's Personnel Director, that over the past year Clark and Greenleaf had subjected her to acts and communications of a sexual nature, including gestures, comments, obscene jokes, pictures, and unwelcome physical contact such as hugs. Holm met with Clark and advised him to cease the offensive conduct. Holm also told Gunnell she would seek positions to which Gunnell might transfer out of the Plant Operations Department.

While Holm was investigating her complaint, Gunnell took an administrative leave of absence. Clark admitted to Holm that some of the conduct Gunnell complained of had occurred, but denied the other alleged incidents. Associate Vice President for Facilities Patrick Hayes ("Hayes"), to whom Holm reported the situation, directed Clark to distribute UVSC's sexual harassment policy to his staff and discuss it with them. Hayes felt that this would give employees a chance to bring forth any other allegations of harassment. None did. Hayes instructed Clark, Greenleaf, and other directors that there was to be no

retaliation against Gunnell when she returned. In mid-May, Holm told Gunnell that she would not be transferred and that she would have to return to work by May 24 or her employment would be terminated.

Gunnell responded that she was suffering from anxiety and stress related to her work situation and took sick leave from May 24 to July 8. During this time, she filed two internal written grievances pursuant to UVSC's employee grievance policy. In the grievances, she alleged that Clark and Greenleaf had sexually harassed her, and she requested a transfer to a different department. Before Gunnell returned to work, the grievance committee decided that inappropriate actions had been taken by Clark and Greenleaf, but that Gunnell should return to her position in Plant Operations in a restructured position with the same salary. Gunnell did not appeal the committee's resolution.

Immediately after Gunnell complained to Holm, the sexual harassment stopped. Gunnell continued to work in the Plant Operations Department between July 9 and November 9, 1993. During this time, she alleges, she was given inferior office equipment and fewer responsibilities and she was treated badly by co-workers. On September 17, 1993, she filed a notice of discrimination with the Utah Anti-Discrimination Division ("UADD"). On the notice, only the box marked "retaliation" was marked under the "Cause of discrimination based on" section. The explanation stated:

Personal Harm: My job duties have been unfavorably changed, people have tried to set me up at work, I have been treated unfavorably by management and have been treated unfavorably by co-workers.

Respondent's Reason: None

Discrimination Statement: I accused two of my supervisors of sexual harassment. The Respondent conducted an internal investigation into my charges, and the harassment was found to have occurred. Although the harassment stopped, I was subsequently retaliated against.

While Respondent was conducting its investigation into my sexual harassment charges, I took two months sick leave. Upon my return, my job duties were changed significantly from what they had been before. My more complex duties were taken away, and I was assigned menial tasks such as copying, maintaining files and working the phones. My job description was completely redone and was minimized in structure and complexity. In addition, I was initially told there was no guarantee that my job title and salary would remain the same. Although I have since received assurance that my title and salary are guaranteed, I still feel that they could be changed.

In addition, false accusations have been made against me and people have tried to set me up. After leaving work one Friday, someone got into my desk and placed confidential payroll records on top of the desk. As a result, it appeared that I had left confidential information out in the open. I was also accused of costing Respondent $4,000 by using the wrong purchase number. The purchase number was used during my absence, however, and the loss was $2,700. The person who used the purchase number told me that he was told to use it, but would not state who had told him to use the number. The personnel office held a meeting with me in which they accused me of creating a hostile work environment by taking notes in my dayplanner. I felt like I was being personally attacked in the meeting. In addition, I have been left out of office communications and my co-workers have been told not to talk to me.

I also feel that I am discriminated against because of my age because my boss treats the younger employees more favorably.

I have reason to charge this employer with unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Utah Anti-Discrimination Act of 1965, as amended.

On November 9, Hayes gave Gunnell a letter notifying her she was on probation for taking notes about her fellow employees while at work and for creating a hostile work environment through excessive complaining and lack of cooperation with her co-workers. The letter stated that any actions "which are deemed to be counter-productive to the functions housed at the Planning Center during this probationary period will result in your immediate termination." Gunnell went to Clark's office and said, "I've had it. I'm through. This is it. I have not created a hostile work environment. Good luck Bob Clark!" She gathered her belongings and went home. From home, Gunnell called Holm and said she had left the office because of illness. Gunnell said she intended to take medical leave and that she would have her doctor prepare a report. On that day, Gunnell also prepared a supplement to her UADD complaint. The supplement stated:

> I, Rosalie Gunnell, hereby supplement my Charge of Discrimination in the above-entitled action as follows:
> 1. I was subjected to a continuing pattern and practice of sexual harassment by Utah Valley Community College, now known as Utah Valley State College ("UVSC"), and my Supervisor, Robert Clark, continuing up to at least April 16, 1993.

2.  Following my expression of oposition [sic] to said pattern and practice of sexual harassment, on or about April 27, 1993, I have been subjected to a continuing pattern and practice of retaliation from UVSC management and employees, continuing up to at least October 25, 1993.

3.  On or about October 25, 1993, I was denied transfer to a position for which I was qualified in retaliation for my having expressed opposition to said acts of sexual harassment and retaliation.

Gunnell called in sick on November 10, 11, and 12, 1993.  On November 13, she received a letter from Hayes terminating her employment, effective November 12, because of her insubordination and disruptive behavior, both on November 9 and on other occasions.

Gunnell filed suit for sexual discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a) (1994), and for denial of medical leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C.A. § 2601 et seq. (West Supp. 1998).  The district court held that Gunnell had not appealed the rulings of the UVSC Grievance Committee and therefore had adopted its determinations, that she did not include the sexual harassment claim in her UADD complaint, and that the sexual harassment had stopped promptly after she complained to Holm.  The district court also held that Gunnell had not fulfilled the requirements for obtaining FMLA leave and that she had not shown how her request for FMLA leave and her termination were connected.  Consequently, it granted summary judgment for defendants on those

two claims and denied Gunnell's subsequent motion to alter or amend the judgment under Federal Rule of Civil Procedure 59.

The Title VII retaliation claim went to trial. Gunnell objected to the district court's proposed jury instruction regarding the standard of employer liability for retaliation. Gunnell argued that the instruction should provide that UVSC could be found liable for retaliation if management-level employees knew or should have known about the retaliatory acts of Gunnell's co-workers and failed to stop them – essentially, a negligence standard. The district court rejected Gunnell's argument and limited the instruction to read that UVSC could be held liable for the acts only of its management and supervisory-level employees, such as Hayes or Clark.[1] The jury found in favor of UVSC.

---

[1] The challenged jury instructions read as follows:

> The second element of the [claim] concerns alleged adverse action by the employer, Utah Valley State College.
> An employer, such as Utah Valley State College, may be liable for discriminatory retaliation by reason of the actions of persons in supervisory positions who had significant control over the Plaintiff's hiring, firing, or conditions of employment, or by management-level employees who have ultimate authority to hire, fire and to control conditions of employment.
> ***
> The fourth element is intentional discrimination.
> An employer, such as Utah Valley State College, can be held liable for intentional retaliatory acts of an individual, but such an individual must be a management-level employee or an employee in a supervisory position over plaintiff and exercise significant control

(continued...)

- 8 -

Gunnell appeals the grants of summary judgment and the jury instructions given by the district court on retaliation.

## DISCUSSION

### I. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court under Federal Rule of Civil Procedure 56(c) and examining the factual record in the light most favorable to the party opposing summary judgment. See Belhomme v. Widnall, 127 F.3d 1214, 1216 (10th Cir. 1997), cert. denied, 118 S. Ct. 1569 (1998).

We review a district court's decision on whether to give a specific jury instruction for abuse of discretion, but we review the instructions themselves de novo to determine whether as a whole they state the governing law and provide the jury with a proper understanding of the issues. See Thomas v. Denny's Inc., 111 F.3d 1506, 1509 (10th Cir.), cert. denied, 118 S. Ct. 626 (1997).

---

[1](...continued)
over Plaintiff's hiring, firing, or conditions of employment. Intentional discriminatory acts of retaliation may be shown either directly by evidence that the employer, Utah Valley State College, acted with a discriminatory motive or indirectly by showing that the stated reasons for the adverse employment actions were a mere "pretext" for retaliation.

## II.  Summary Judgment

### A.  Title VII Sexual Harassment Claim

The district court advanced three reasons for granting summary judgment to UVSC on Gunnell's Title VII sexual harassment claim:  (1) Gunnell failed to appeal the decision of the university's grievance committee within the university system; (2) the sexual harassment stopped after Gunnell complained about it to the personnel director; and (3) Gunnell's UADD complaint addressed only the retaliation issue.  We reverse and remand for further proceedings.

First, the district court held that Gunnell failed to appeal the decision of the university grievance committee and thus apparently acquiesced in its resolution of her grievances.  However, the fact that Gunnell failed to appeal internally the grievance committee's decision is not dispositive, given that a Title VII plaintiff is not required to exhaust her employer's internal grievance procedures before filing suit.  See Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1453-54 (10th Cir. 1997) (no requirement that union employee exhaust grievance procedure which was provided in collective bargaining agreement), cert. granted and opinion vacated on other grounds, 118 S. Ct. 2364 (1998); Johnson v. Greater Southeast Commun. Hosp. Corp., 951 F.2d 1268, 1276 (D.C. Cir. 1991) ("A private party alleging federal civil rights violations need not pursue internal administrative remedies before pressing a claim in federal court.").  Even if we surmise that

- 10 -

Gunnell, by returning to her employment under the conditions outlined by the grievance committee, acquiesced in future conduct, there is nothing to suggest that she acquiesced in any remedy for past conduct. Consequently, the district court should not have relied on this factor in granting summary judgment for UVSC.

Further, Gunnell sufficiently presented her complaint of sexual harassment to the UADD and the EEOC.[2]  While we do not construe Gunnell's September UADD/EEOC charge as alleging more than a retaliation claim, her November supplement to her charge presented a sufficient claim of sexual harassment.  As to Gunnell's September claim, we note that Gunnell marked only the "retaliation" box on her administrative complaint.  Although her failure to mark the box for sex discrimination is not dispositive, see Kristufek v. Hussmann Foodservice Co., 985 F.2d 364, 368 (7th Cir. 1993); Hornsby v. Conoco, Inc., 777 F.2d 243, 247 (5th Cir. 1985), it certainly creates a presumption that she was not asserting claims represented by boxes not checked.  Here, that presumption was not rebutted by the text of her claim because the prose she used to describe her claim did not clearly set forth a sexual discrimination claim.  A reasonable reader would understand that her mention of sex discrimination was merely a prelude, an

---

[2]  The filing of a discrimination charge with either a state or federal administrative agency is a prerequisite to filing a Title VII discrimination suit in federal court.  See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir.), cert. denied, 118 S. Ct. 342 (1997).

explanation leading up to the gist of her complaint of retaliation. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994) (employee's EEOC charge, which mentioned filing previous racial discrimination charge, reasonably read as alleging only retaliation claim, particularly in light of employee's failure to check box for racial discrimination). However, Gunnell's November 9 supplement to her charge does complain about Clark's harassment. The allegation in the supplement, though sparse, identifies the type of discrimination complained of, the alleged harasser, and an approximate time period, and thus is minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement. See 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.12(b); see also Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994) (purpose of requiring administrative exhaustion is to give notice of alleged violation to charged party and to give EEOC an opportunity to conciliate the claim). Moreover, although UVSC argues that there is nothing in the record to show that Gunnell filed the supplement with the UADD, Gunnell's affidavit asserted that she filed the supplementary complaint. Consequently, there was evidence before the district court that a timely complaint alleging sexual harassment had been filed with the UADD, making the matter inappropriate for summary judgment on this ground.[3]

---

[3] Title VII requires a plaintiff to file a discrimination complaint with the

(continued...)

- 12 -

The only remaining ground for granting summary judgment rests on the district court's conclusion that the harassment stopped as soon as Gunnell complained to Holm. In Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998), and Burlington Indus. v. Ellerth, 118 S. Ct. 2257 (1998), the Supreme Court articulated the relevant standard:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Faragher, 118 S. Ct. at 2292-93; Burlington Indus., 118 S. Ct. at 2270.

The record on appeal shows that Clark arguably was Gunnell's supervisor. Thus, the principles of employer liability set forth in Faragher and Burlington

---

[3](...continued)
EEOC within 180 days or with a state agency within 300 days of the complained-of conduct. See 42 U.S.C.A. § 2000e-5(e)(1). In Utah, plaintiffs have recourse to the Utah Anti-Discrimination Division, and so the 300-day limit applies. See Metcalf v. Metropolitan Life, Inc., 961 F. Supp. 1536, 1542 (D. Utah 1997). In light of our holding that Gunnell's September charge did not allege sexual harassment, we do not believe that her November 9 allegation of sexual harassment relates back to her September 17 charge. See 29 C.F.R. § 1601.12(b) (allegations and amendments "related to or growing out of the subject matter of the original charge" will relate back to the date of the filing of the original charge). However, Gunnell's November 9 charge was timely because it alleged that the sexual harassment occurred within 300 days of the complaint.

Industries apply to this case. Under Faragher and Burlington Industries, an employer whose supervisory personnel has harassed subordinates will be liable for the harassment that occurred even though the employer ultimately stopped further harassment. If the employee has not been subjected to any tangible employment action, however, the employer may assert an affirmative defense to any liability by showing both that it had reasonable mechanisms in place to prevent and to cure any discriminatory practices and that the plaintiff employee unreasonably failed to take advantage of such opportunities. Before the district court, UVSC argued generally that it acted promptly to correct any inappropriate behavior. However, given that Faragher and Burlington Industries have now set forth a specific defense to employer liability for sexual harassment by a supervisor, we reverse summary judgment on this claim and remand to allow the district court to evaluate Gunnell's claim in light of these recent Supreme Court cases. For example, under Faragher and Burlington Industries the district court should consider whether there was a hostile work environment based on sexual harassment of Gunnell that existed within the limitations period; whether Clark or others who caused such hostile work environment were Gunnell's supervisors; whether UVSC had a reasonable policy in place to prevent and correct promptly such sexually harassing behavior; and whether Gunnell unreasonably failed to take advantage of such policies or to avoid harm otherwise.

- 14 -

**B. FMLA Claim**

The district court granted summary judgment for UVSC on Gunnell's FMLA claim for three reasons: (1) Gunnell had not given UVSC proper notice of her need for medical leave; (2) Gunnell failed to supply proper certification of her need for medical leave; and (3) Gunnell did not show that her request for FMLA leave was connected to her termination. We affirm on essentially the third ground, and accordingly do not address the first two grounds.

FMLA provides that employers must allow employees up to twelve weeks of leave in a year if the leave is requested for one of the purposes specified in the statute, including an employee's "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D). At the end of the leave, the employee must be reinstated to his or her position or to a position equivalent in pay, benefits, and other terms and conditions of employment. See 29 U.S.C.A. § 2614(a)(1). Under FMLA, it is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," 29 U.S.C.A. § 2615(a)(1), and "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter," 29 U.S.C.A. § 2615(a)(2). Gunnell explicitly disavows any § 2615(a)(2) claim that she was terminated because she requested

- 15 -

FMLA leave. Instead, she asserts a cause of action under 29 U.S.C.A. § 2615(a)(1), alleging that her employer interfered with her exercise of her FMLA rights by ending her employment, which effectively denied her FMLA leave request.

Gunnell was not deprived of her right to leave in violation of FMLA. Under FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work. See 29 C.F.R. § 825.216(a). For this reason, an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request. Cf. 29 C.F.R. § 825.216(a) (noting that employee may be laid off or refused return to shift that has been eliminated, as long as the action would have been taken in the absence of FMLA leave); Vargas v. Globetrotters Eng. Corp., 4 F. Supp. 2d 780, 783 (N.D. Ill. 1998) (secretary had no right to reinstatement to field secretary position because it had been eliminated before she returned from leave); Carrillo v. National Council of the Churches of Jesus Christ, 976 F. Supp. 254, 256 (S.D.N.Y. 1997) (termination while employee was on medical leave did not violate FMLA; decision to terminate employment clear before leave taken). Gunnell asserts that summary judgment is precluded because there remain disputed issues of fact regarding whether her conduct warranted termination, but

she specifically refuses to argue that she was fired because of her FMLA request. In light of this concession, any reason for terminating Gunnell's employment would not involve FMLA, and consequently that statute can offer Gunnell no relief.[4]

### III. Jury Instructions

On appeal, Gunnell argues that the district court improperly instructed the jury on employer liability for the retaliatory acts of employees because it limited the instruction to include only the retaliatory acts of management and supervisory-level employees and not the retaliatory acts of co-workers. In addition, she contends that the district court erred by refusing to give her proposed instruction on employer liability.[5]

---

[4] We note that Gunnell makes no argument that she was denied her FMLA rights between the date of her request for leave (November 9, 1993) and the date her employment was terminated (November 12, 1993). She called in sick on November 10, 11, and 12, 1993. Such use of sick leave is in accordance with FMLA, which provides that an employer may require an employee to use accumulated sick leave for any part of a leave granted on account of an employee's serious health condition. See 29 U.S.C.A. § 2612(d)(2)(B).

[5] We reject UVSC's argument that Gunnell did not preserve her objections for appeal. At the final pretrial conference, Gunnell argued that the jury should be instructed on UVSC's potential liability for the retaliatory acts of Gunnell's co-workers, and that a negligence analysis would be appropriate. Her concern was reiterated at the jury instruction conference. Although UVSC contends that Gunnell failed to raise the issue when the court asked if there were any objections to the jury instructions, we believe a fair reading of the colloquy between court and counsel indicates that both believed her objections were on the record. Thus, we shall review Gunnell's argument on its merits. See Abercrombie v.

(continued...)

- 17 -

## A. Instruction Given by Court

Title VII prohibits retaliation against an employee because he or she "has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie Title VII retaliation claim, the plaintiff must show: (1) he or she was engaged in opposition to Title VII discrimination; (2) he or she was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action. See Murray v. City of Sapulpa, 45 F.3d 1417, 1420 (10th Cir. 1995). It is well settled that the burden of persuading the factfinder that the defendant intentionally discriminated remains at all times with the plaintiff. A showing of retaliatory motive has long been relevant to the causation prong of a retaliation claim, see, e.g., Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982), but in Purrington v. University of Utah, 996 F.2d 1025 (10th Cir. 1993), we made it clear that the plaintiff must prove that the defendant's action was intentionally retaliatory. See id. at 1033; see also Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 122 (2d Cir. 1996) ("A plaintiff asserting a

[5](...continued)
Osteopathic Hosp. Founders Ass'n, 950 F.2d 676, 679 (10th Cir. 1991).

- 18 -

retaliation claim 'has the ultimate burden of persuasion to demonstrate that the challenged employment decision was the result of intentional retaliation.'") (citation omitted), <u>cert. denied</u>, 117 S. Ct. 2453 (1997).

In light of these principles, the district court instructed the jury that:

> In order to establish a claim of retaliation, plaintiff must prove, by a preponderance of the evidence, each of the following elements:
> (1) a protected opposition to discrimination;
> (2) adverse action by an employer contemporaneous with or subsequent to the employee's protected activity;
> (3) a causal connection between such activity and the employer's action;
> (4) the employer's action constitutes intentional discrimination.
> In this case, the first element – protected action by plaintiff – requires determination by the jury whether the filing of a grievance by plaintiff for alleged sexual harassment constituted protected activity in opposition to discrimination; the second element – adverse actions by defendant – requires determination by the jury whether actions which adversely affected Plaintiff were taken by defendant Utah Valley State College contemporaneously or shortly after the grievance was filed; the third element – causation – requires determination by the jury whether a motivation of the actions of Utah Valley State College was retaliation for the filing of the grievance by plaintiff; the fourth element – intentional conduct – requires determination by the jury whether the actions of Utah Valley State College constituted intentional retaliation.

The court then gave the jury specific instructions as to each element.

Gunnell challenges the court's instructions on the second element of adverse action by an employer and the fourth element of intentional conduct. The second element instruction stated:

The second element of the [claim] concerns alleged adverse action by the employer, Utah Valley State College.

An employer, such as Utah Valley State College, may be liable for discriminatory retaliation by reason of the actions of persons in supervisory positions who had significant control over the Plaintiff's hiring, firing, or conditions of employment, or by management-level employees who have ultimate authority to hire, fire and to control conditions of employment.

The fourth element instruction stated:

The fourth element is intentional discrimination.

An employer, such as Utah Valley State College, can be held liable for intentional retaliatory acts of an individual, but such an individual must be a management-level employee or an employee in a supervisory position over plaintiff and exercise significant control over Plaintiff's hiring, firing, or conditions of employment. Intentional discriminatory acts of retaliation may be shown either directly by evidence that the employer, Utah Valley State College, acted with a discriminatory motive or indirectly by showing that the stated reasons for the adverse employment actions were a mere "pretext" for retaliation.

Gunnell argues that the district court's instructions incorrectly foreclosed a finding of liability where the acts of retaliation were committed by co-workers (as opposed to management or supervisor-level employees), but where management-level employees knew or should have known that her co-workers were intentionally retaliating against her and failed to take action. She contends that because negligent employers may be held liable for <u>sexual harassment</u> by co-workers, negligent employers should be liable for <u>retaliation</u> by co-workers as well.

- 20 -

Deciding whether hostility or harassment by co-workers may support a retaliation claim requires us to analyze two questions: first, whether the actions of co-workers can constitute an "adverse employment action," as required by the second prong of the prima facie case; and second, whether retaliatory acts of co-workers can be considered the intentional conduct of the employer, as required by the second and third prongs of the prima facie case and by Purrington.

First, we address whether the actions of co-workers can constitute an "adverse employment action." Several of our sister circuits have narrowly defined the term "adverse employment action," holding that campaigns of hostility and harassment directed against plaintiffs, whether by co-workers or by supervisors, are insufficient to establish adverse employment action. See Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997) (hostility and personal animus directed at plaintiffs by supervisors insufficient to show retaliation "[a]bsent evidence of some more tangible change in duties or working conditions that constituted a material employment disadvantage."); Munday v. Waste Management of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997) ("In no case in this circuit have we found an adverse employment action to encompass a situation where the employer has instructed employees to ignore and spy on an employee who engaged in protected activity, without evidence that the terms, conditions, or benefits of her employment were adversely

affected."), cert. denied, 118 S. Ct. 1053 (1998); Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir.) ("adverse action" must be an "ultimate employment decision[]," such as hiring, compensating, promoting, granting leave, or firing; "Hostility from fellow employees, having tools stolen, and resulting anxiety, without more, do not constitute ultimate employment decisions, and therefore are not the required adverse employment actions."), cert. denied, 118 S. Ct. 336 (1997) . In contrast, at least two other circuits have indicated, in dicta, that co-worker hostility or retaliatory harassment which is known about and acquiesced in by supervisors or management may be considered an "adverse employment action." See Knox v. State of Ind., 93 F.3d 1327, 1334 (7th Cir. 1996) ("No one would question the retaliatory effect of many actions that put the complainant in a more unfriendly working environment . . . . Nothing indicates why a different form of retaliation – namely, retaliating against a complainant by permitting her fellow employees to punish her for invoking her rights under Title VII – does not fall within the statute."); Wyatt v. City of Boston, 35 F.3d 13, 15-16 (1st Cir. 1994) (per curiam) (citing 3 Arthur Larson & Lex K. Larson, Employment Discrimination § 87.20, at 17-101 to 17-107 (1994), which includes among adverse employment actions, "toleration of harassment by other employees" as example of retaliatory activity).

Although we have never addressed the precise question whether co-worker hostility may qualify as an "adverse employment action," in our retaliation cases we have liberally interpreted the phrase "adverse employment action." In Jeffries v. Kansas, – F.3d –, 1998 WL 318533, at *11 (10th Cir. June 17, 1998), we recently stated, "In recognition of the remedial nature of Title VII, the law in this circuit liberally defines adverse employment action." Rather than defining a set rule regarding what constitutes an "adverse employment action," we noted that "this court takes a case-by-case approach to determining whether a given employment action is 'adverse.'" Id. (citing Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1507 (10th Cir. 1996), and Berry v. Stevinson Chevrolet, 74 F.3d 980, 986-87 (10th Cir. 1996)). In Berry, for example, where the district court found that management caused plaintiff's co-worker to initiate a criminal complaint against plaintiff, we found that malicious prosecution may constitute an "adverse employment action." See 74 F.3d at 986-87. Under our circuit precedent we believe that co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute "adverse employment action" for purposes of a retaliation claim.

We must next decide under what circumstances such co-worker hostility can be considered intentional retaliation on the part of the employer. We perceive at least three factual scenarios involving co-worker retaliatory harassment: (1) co-

- 23 -

workers, without the knowledge of supervisory or management personnel, independently take it upon themselves to harass the plaintiff in retaliation for engaging in protected activity; (2) supervisory or management personnel know about and acquiesce in or condone the retaliatory harassment by the plaintiff's co-workers; and (3) supervisory or management personnel orchestrate the campaign of co-worker harassment.  Gunnell, by advocating a "known or should have known" standard, would hold employers liable in each of the three scenarios.  However, because harassment must be intentional on the part of the employer, we hold that an employer can only be liable for co-workers' retaliatory harassment where its supervisory or management personnel either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions.  See Knox, 93 F.3d at 1333-35 (in dicta, approving an instruction that would hold an employer liable for "retaliation . . . committed by co-workers with the knowledge and acquiescence of the employer.")  An employer may not be held liable for the retaliatory acts of co-workers if none of its supervisory or management-level personnel orchestrated, condoned, or encouraged the co-workers' actions, and no such management participation could occur if the supervisory or management-level personnel did not actually know of the co-workers' retaliation.

Our conclusion that an employer may be liable for the retaliatory acts of co-workers, however, does not require us to reverse the jury verdict in this case in favor of UVSC. The instruction given restricted UVSC's liability to the acts of management-level and supervisory personnel. As we have explained, for UVSC to be liable for a campaign of co-worker harassment, management-level or supervisory personnel must either have orchestrated or have known about and condoned the conduct of Gunnell's co-workers. Consequently, the instruction correctly alerted the jury that it would have to find some management or supervisory involvement in the retaliatory conduct to hold UVSC liable for <u>co-worker</u> retaliation. The jury chose not to so find.

In addition, the record on appeal tends to show that most of Gunnell's allegations pertained to retaliatory acts which Gunnell complained were allegedly committed directly by management-level or supervisory personnel.[6] We doubt that the few actions identifiably taken by co-workers, which generally seem to involve incidents of rudeness, are sufficient to support a claim for retaliation, given that Title VII neither is a "general civility code" nor does it make

---

[6] Gunnell has not provided us with a transcript of the trial proceedings, so we cannot determine what the evidence at trial showed. Instead, we rely on the allegations included in the pretrial plan, which is part of the appellate record. The jury instructions, of course, properly instructed that UVSC could be held liable for acts of retaliation committed by management-level or supervisory employees. The jury returned a verdict for UVSC, indicating that it found no such acts of retaliation by UVSC's management or supervisors.

actionable the "'ordinary tribulations of the workplace.'" Faragher, 118 S. Ct. at 2283-84 (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)); see also Jeffries, 1998 WL 318533 at *12 (suggesting that "tense personal relationships do not rise to the level of actionable retaliation"). As a result, any error in the instructions given by the district court regarding co-worker liability would be harmless.

### B. Gunnell's Requested Instruction

Gunnell also appeals the district court's refusal to give her proposed instruction on employer liability for retaliation. Her proposed instruction stated:

> An employer, such as Utah Valley State College, may be liable for any act of unlawful retaliatin [sic] which is (1) committed by an employee acting within the scope of his or her employment; (2) committed by an employee in which the employer was negligent or reckless; or (3) in which the employee purported to act or speak on behalf of the employer and there was reliance upon apparent authority, or the employee was aided in accomplishing the retaliation by the existence of the agency relation.

The law of this circuit requires Gunnell to show that she was intentionally retaliated against by her employer. See Purrington, 996 F.2d at 1033. Gunnell's proposed instruction does not instruct the jury that the employer's retaliation must have been intentional, and indeed would impose liability on a negligent employer, a standard we reject above. Because Gunnell's proposed instruction was an erroneous statement of the law, the district court did not err in refusing to give it. See Federal Deposit Ins. Corp. v. Appling, 992 F.2d 1109, 1115 (10th Cir. 1993).

**CONCLUSION**

We AFFIRM summary judgment in favor of UVSC on Gunnell's FMLA claim and AFFIRM the jury verdict in favor of UVSC on Gunnell's retaliation claim. In light of recent Supreme Court precedent, we REVERSE summary judgment in favor of UVSC on Gunnell's hostile work environment claim and REMAND for further proceedings in the district court.