**Charles P. STONE, Plaintiff,**

v.

**WESTERN RESOURCES, INC., Defendant.**

**No. 01–4015–JAR.**

United States District Court, D. Kansas.

Sept. 6, 2002.

Donald R. Hoffman, Jason P. Hoffman, Hoffman & Hoffman, Topeka, KS, for Plaintiff.

David P. Mudrick, K. Gary Sebelius, Kevin James Gruberger, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Kansas City, KS, for Defendant.

## *MEMORANDUM ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

ROBINSON, District Judge.

This matter is before the Court on the motion of Defendant, Western Resources, for summary judgment (Doc. 31) against Plaintiff, Charles P. Stone, who brought this action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (ADEA). Stone filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging that Western Resources' failure to hire him was based on gender discrimination. Some 12 months later, and some 10 months after Stone says that he learned he was not hired, Stone filed an Amended EEOC complaint alleging age discrimination. Because Stone did not timely file an EEOC complaint on his claim of age discrimination, he has failed to administratively exhaust his claim and the Court therefore grants Western Resources' motion for summary judgment. Even if the Amended EEOC complaint relates back to the original EEOC complaint, Stone has failed to make a prima facie showing of age discrimination. Accordingly, were the Court not to grant this motion on jurisdictional grounds, the Court would grant the motion on the merits.

## FACTS

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Stone's case. Immaterial facts and facts not properly supported by the record are omitted. There are a number of facts that Stone purports to controvert, but which the Court deems not genuinely controverted, either because Stone has no personal knowledge or because the record does not support Stone's statement of the purported controverted fact.

Stone was employed by Western Resources as a Senior Staff Accountant until he took early retirement effective December 1, 1997. At the end of 1996, Stone learned that Western Resources was entering into a business transaction with a company named ONEOK. On December 12, 1996, an Employee Update indicated that approximately 1,575 Western Resources employees would be reassigned to positions at ONEOK. As of April 1997, Stone was aware that his position was one of the positions being reallocated to ONEOK. Stone and other employees whose positions were reallocated to ONEOK had several options: (1) accept the job offer; (2) if the job offer required relocation, the employee could reject it, and hope to receive a second offer; and (3) failing receipt of a second offer after having rejected the first offer, the employee would be voluntarily terminated from employment at Western Resources, with the termination effective at the time of the closing of the transaction between Western Resources and ONEOK.

Stone received an offer from ONEOK that provided the same rate of pay but required his relocation to Tulsa. Stone rejected the offer, did not receive a second offer, and opted to take early retirement in

lieu of voluntary termination. Stone notified Western Resources by e-mail, on October 14, 1997, of his intention to retire, stating that his retirement would be effective at "the closing of the Western Resources/ONEOK transaction." Stone further stated that he had already requested and received a computation of benefits based on a December 1, 1997 retirement date.

On or about November 14, 1997, Stone saw a job posting for an auditor position with Western Resources. At some point, Stone spoke with Ted Fuhrken, then Manager of Employment & Accommodation for Western Resources; and to Dave Roth, then Vice President of Human Resources for Western Resources, about the effect of Stone's allocated status on his job application.[1] On November 18, 1997, Stone applied for the job. The job announcement stated that there was a priority of recruitment for the position: (1) internal candidates within the immediate work group whose positions were not allocated to ONEOK; (2) other Western Resources employees whose positions were not allocated to ONEOK; and (3) Western Resources employees whose positions had been allocated to ONEOK or other Western Resources subsidiaries, or external candidates (from outside of Western Resources). The third tier of priority had no internal priority; in other words, if a position could not be filled by a Western Resources employee whose position had not been allocated, then Western Resources could hire either an employee whose position had been allocated; or Western Resources could hire an external candidate.

In November, sometime after the auditor position was announced, Western Resources ascertained the closing date of its transaction with ONEOK. In a letter to Stone, dated November 26, 1997, Western Resources Director of Taxation stated that with the closing of the transaction on December 1, 1997, it was time to finalize Stone's retirement arrangements. Two checks for separation pay and benefits were enclosed.

Once Western Resources had ascertained the closing date, it no longer considered for Western Resources positions, any of its employees whose positions had been allocated to ONEOK, because Western Resources' agreement with ONEOK required that Western Resources repay to ONEOK any separation benefits Western Resources paid out to its employees within one year after the closing date. Thus, Stone was not interviewed nor considered for the auditor position. Another applicant for the auditor position, Steve Wire, whose position had also been allocated to ONEOK, was not hired for the auditor position. Western Resources rejected Wire in November 1997; records inexplicably show that Wire's job application was either faxed to, or from, Western Resources on December 17, 1997. Sometime after December 1, 1997, Western Resources hired Janet Rinehart and Cindy Wilson. Rinehart, a Western Resources' employee, began working in the auditor position in late December 1997, or early January 1998. At 31 years of age, Rinehart was younger than Stone but older than another unsuccessful applicant, Steve Wire, who applied for the position around the same time that Stone applied, and whose position was, like Stone's, allocated to ONEOK. Wilson was an external candidate, who began working in the auditor position on or about January 12, 1998. At 24 years of age, she was younger than Stone or Wire. A number of other Western Resources positions were filled during the

---

1. Although Stone's statement of facts includes the substance of what Furhken and Roth told him, the Court disregards the same as inadmissible hearsay. Stone did not support his assertion with the affidavits of Furhken and Roth.

period from November 18, 1997 to January 5, 1998, all going to Western Resources employees whose positions had not been allocated. A number of Western Resources employees whose positions had been allocated to ONEOK were not hired for these positions. According to Stone, he did not learn that Western Resources was not considering him for the auditor position until February 4, 1998.[2]

On or about November 28, 1998, Stone signed an EEOC charge that Western Resources had discriminated against him on the basis of his sex. Although there was a box for age discrimination on the form Stone filled out, he did not check the box for age discrimination. The EEOC received Stone's charge on December 1, 1998. Western Resources contends that the EEOC received the charge on December 2, 1998, based on a handwritten EEOC case log. However, two other EEOC documents show that the EEOC received the charge on December 1, 1998: an EEOC charge database printout and an EEOC charge transmittal. The EEOC's documents are conflicting, and the parties dispute the date of receipt. This is an issue of fact.

Stone had communications with three EEOC investigators. On May 11, 1999, Stone responded to an investigator's letter; Stone explained that his charge was based on gender, not age discrimination. Stone did not provide this investigator with any information concerning possible age discrimination. In a November 10, 1999 letter to Stone, another EEOC investigator did not mention any age discrimination. And, in Stone's November 14, 1999 letter in response to the November 10 letter, Stone again neither mentioned nor provided any information about age discrimination.

On May 17, 2000 another EEOC investigator transmitted an amended charge to Stone for signature. The amended charge added a claim for age discrimination. On May 22, 2000, Stone signed the amended charge. Nothing in the record suggests how or when Stone became aware that Western Resources might have discriminated against him on the basis of age. However, Stone points to a June 4, 1999 letter from Western Resources' Equal Employment Opportunity ("EEO") Specialist to an EEOC investigator, which responded to a question about why Stone was not interviewed for the auditor position, which references, in pertinent part, as follows:

> At a certain point as the Closing Date became near, it was decided that WR [Western Resources'] employees who had been allocated to the ONEOK transaction would not be interviewed for WR vacancies.... The Complainant voluntarily retired December 1, after the time he was informed he would not be selected for the Internal Auditor position, and received a $27,120 payment (before taxes). The interviews for the Internal Auditor position did not begin until December, 1997, after the Complainant retired. Even had Stone not been a ONEOK-allocated employee, his retirement would have removed his internal job opportunity application from consideration.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A

---

2. Western Resources does not controvert this assertion for purposes of this motion, only.

3. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91

factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[4] An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.[5] The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact.[6] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[7] The nonmoving party may not rest on its pleadings but must set forth specific facts.[8] The court must consider the record in the light most favorable to the party opposing the motion.[9] The court determines "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."[10] In making such a determination, the court should not weigh the evidence or credibility of witnesses. In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing summary judgment.[11] If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate.[12]

## DISCUSSION

Western Resources moves for summary judgment on the basis that Stone's ADEA claim was not timely filed with the EEOC. Any person wishing to bring a claim under ADEA in a deferral state, such as Kansas, must file a claim with the EEOC within 300 days of the alleged unlawful practice.[13] Timely filing of an EEOC claim is a prerequisite to filing a civil lawsuit in the federal courts.[14] For purposes of this motion, Western Resources does not controvert Stone's assertion that he was not informed that he did not receive the auditor position, until February 4, 1998. Stone's 300 day period in which to file his EEOC charge expired on December 1, 1998. Although Stone argues that the EEOC had his charge on December 1 and neglected to file it until December 2, Stone does not support this assertion with any evidence. The record merely shows that two EEOC documents record receipt of the charge on December 1; one EEOC document rec-

L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993).

4. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

5. *Id.* at 248, 106 S.Ct. 2505.

6. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991).

7. *Applied Genetics Int'l Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548).

8. *Id.*

9. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

10. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

11. *McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

12. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (citation omitted).

13. *Bennett v. Quark, Inc.,* 258 F.3d 1220, 1225 (10th Cir.2001)[citing 29 U.S.C. § 626(d)(2)]; *Smith v. Board of County Comm'rs of Johnson County, Kan.,* 96 F.Supp.2d 1177, 1185 (D.Kan.2000).

14. *Bullington v. United Air Lines Inc.,* 186 F.3d 1301, 1311 (10th Cir.1999); *Smith v. Board of County Comm'rs of Johnson County, Kan.,* 96 F.Supp.2d 1177, 1185 (D.Kan.2000).

ords receipt of the charge on December 2. If the charge was received on December 1, it was timely filed; but if it was received on December 2, it was untimely. Although the Court could deny summary judgment because of this disputed fact, the Court can dispose of this summary judgment on other grounds.

Because Stone's original EEOC charge, whether filed December 1 or December 2, did not include an age discrimination charge, Stone argues that his inclusion of an age discrimination charge in his amended complaint, filed May 22, 2000, relates back to the original filing date. For the first time, in this May 22, 2000 filing, more than two years after February 4, 1998, Stone raises age discrimination. Generally, a plaintiff may not bring a Title VII action based upon claims that were not included in a timely filed EEOC charge.[15] The EEOC has promulgated regulations allowing later amendments to the charge to relate back to the original filing. 29 C.F.R. § 1601 states, *inter alia,*

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

Stone's amended charge does not cure a technical defect or omission. In fact, when the EEOC investigator referred to Stone's charge as including age discrimination,

Stone responded in a May 11, 1999 letter, expressly disavowing a charge of age discrimination. Nor can it reasonably be argued that Stone's amended charge of age and sex discrimination merely clarified or amplified his original charge of sex discrimination. In *Gunnell v. Utah Valley State College,*[16] the Tenth Circuit rejected an argument that an amended charge that added sexual harassment was a clarification or amplification of the original charge of retaliation, even though in the original charge, plaintiff alleged that the basis for the retaliation was her complaint of sexual harassment. The court reasoned that the reference to sexual harassment in the original charge was to merely give context for the retaliation claim, and could not be read as including a separate charge of sexual harassment. Similarly, in *Simms v. Oklahoma,*[17] the Tenth Circuit did not allow an amended charge that added a retaliation claim to relate back to the original charge of race discrimination because the original charge did not mention any theory of retaliation or facts supporting such a claim.

Stone argues that it was during the EEOC investigation when he discovered that Western Resources had discriminated against him on the basis of age. This discovery during the investigation, Stone argues, makes the amended charge one that is "related to or growing out of the subject matter of the original charge."[18] But, whether or not the age discrimination occurred at the same time as the sex discrimination, the conduct is not necessarily related.[19] Stone fails to demonstrate that the age discrimination flowed from the sex

---

**15.** *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F.3d 1321, 1326 (10th Cir.1999).

**16.** 152 F.3d 1253 (10th Cir.1998).

**17.** *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F.3d 1321 (10th Cir.1999).

**18.** 29 C.F.R. § 1601.

**19.** See *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 963 (4th Cir. 1996)[age discrimination does not relate back to sex discrimination unless the age discrimination flowed from the sex discrimination].

discrimination that was the basis of his original charge. Moreover, discovery . of an additional charge during the EEOC investigation is not an exception allowing for relation back under 29 C.F.R. § 1601, unless the additional charge relates to or flows from the original charge. Stone asserts that he discovered the age discrimination when in response to an EEOC inquiry about the basis for Stone not being hired, Western Resources stated: "[e]ven had Stone not been a ONEOK-allocated employee, his retirement would have removed his internal job opportunity application from consideration."

Aside from the fact that the regulation does not allow relation back because of claimant's discovery of a new basis of the alleged discrimination, Stone's argument is fatal. First, Western Resources' response was in a letter dated June 4, 1999; yet Stone did not file an "amended" charge until May 22, 2000. Second, Western Resources' reference to retirement is not an indication of age discrimination. In *Hazen Paper Co. v. Biggins*,[20] the Supreme Court held that retirement status and age are separate considerations in employment and decisions made upon a person's retirement status do not violate the ADEA. This is evident when reading Western Resources' June 4, 1999 letter, which merely indicates that since Stone was retired (as of December 1) he was no longer an "internal" applicant for the position. Thus, whether the EEOC charge was originally filed on December 1 or December 2, 1999, the amended charge does not relate back and is clearly not timely filed; the amended charge was filed more than two years after Stone learned he had not been hired.

**IT IS THEREFORE ORDERED THAT** Defendant Western Resources' Mo-

tion for Summary Judgment (Doc. 31) is **GRANTED**.

---

**20.**   507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d    338 (1993).