**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KARLA SATTERLEE,

        Plaintiff-Appellant,

    v.

ALLEN PRESS, INC.,

        Defendant-Appellee.

No. 06-3385
(D.C. No. 05-CV-4022-JAR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **EBEL** and **TYMKOVICH**, Circuit Judges.


    Karla Satterlee appeals the district court's grant of summary judgment with respect to three claims against her former employer Allen Press, Inc. (AP), a publishing company, for alleged violations of her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. Taking jurisdiction under 28 U.S.C. § 1291, we affirm the district court's order.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. Factual Background

Ms. Satterlee's term of employment with AP began in late April 2001, when she accepted a position in the company's bindery. Her duties there included stacking books and journals. In November 2001, Ms. Satterlee underwent surgery to repair damage to her right wrist and missed approximately one week of work. Following Ms. Satterlee's surgery, AP transferred her to its Association Management department (AM), where she worked in an administrative capacity. In December 2001, Ms. Satterlee injured her left wrist. She visited Dr. William Reed, who initiated a non-surgical treatment plan. Eventually, Dr. Reed and Ms. Satterlee decided that she should undergo surgery to repair her wrist. She scheduled the surgery for March 2003, and she elected to schedule a nasal surgery to correct a deviated septum on February 25, 2003.

In February 2003, AP began to use a new electronic database system in AM. In the estimation of the department's director, Theresa Pickel, the new system eliminated the need for five AM employees. On February 28, 2003, AP terminated the employment of four individuals, including Ms. Satterlee. A fifth employee elected to retire. Ms. Pickel testified that it was her decision to lay off Ms. Satterlee. She chose Ms. Satterlee in part because the implementation of the new database system eliminated Ms. Satterlee's duties. According to Ms. Pickel, Ms. Satterlee was not an efficient employee, and other employees had complained

about the quality of Ms. Satterlee's work.

Ms. Pickel finalized her decision to terminate Ms. Satterlee on February 25, 2003, and she met with Martha Murphy, director of AP's human resources department, on that day to discuss which employees would be laid off. Ms. Satterlee learned of her termination on February 28, 2003, while she was recovering from nasal surgery. She had orally informed her immediate supervisor, Tom MacEwan, that she would not be at work for a few days following the surgery, and she also informed him that she would miss work after her wrist surgery. However, she did not inform Ms. Pickel or anyone in AP's human resources department that she would be missing work for nasal surgery or wrist surgery. Ms. Pickel first learned of Ms. Satterlee's nose surgery when Mr. MacEwan, who did not participate in the decision to fire Ms. Satterlee, informed Ms. Pickel of Ms. Satterlee's impending absence in an email dated February 26, 2003, the day after Ms. Pickel confirmed with Ms. Murphy that Ms. Satterlee's employment would be terminated.

In September 2003, Ms. Satterlee applied for an administrative support specialist position at AP and was not hired. Mr. MacEwan testified that the position would have required Ms. Satterlee to take on more responsibility than she had assumed in her prior work with AP. According to Mr. MacEwan, Ms. Satterlee was not capable of holding the position.

**B.     Ms. Satterlee's Suit Against AP**

Under the FMLA, eligible employees of certain employers may take unpaid medical leave for up to twelve work weeks during any twelve month period for a serious health condition, as defined by the Act.  29 U.S.C. § 2612(a).  Title 29 U.S.C. § 2617(a) authorizes employees to sue to recover damages for particular types of violations of the Act.  Ms. Satterlee filed suit against AP in federal district court, alleging that AP violated her rights under the FMLA by terminating her employment and then failing to rehire her.  Her complaint articulated three separate claims.  First, she contended that AP's termination of her employment impermissibly interfered with her right to take FMLA leave, in violation of § 2615(a)(1).  Second, she argued that AP fired her in retaliation for her decision to take leave under the FMLA, in violation of § 2615(a)(2).  Finally, Ms. Satterlee claimed that under § 2614(a)(1) she was entitled to reinstatement under the FMLA, and that AP's decision not to hire her in September 2003 amounted to interference with her right to take leave under the Act.  Ms. Satterlee also asked the district court to take supplemental jurisdiction over two claims under the Kansas Workers' Compensation Act.

The district court granted summary judgment to AP as to each of the three claims and declined to exercise jurisdiction over the state law claims.  Ms. Satterlee has appealed the order granting summary judgment to AP, but she has not appealed the district court's decision not to grant supplemental jurisdiction.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Butler v. Compton*, 482 F.3d 1277, 1278 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

### B. Ms. Satterlee's Claims

Under the FMLA's enforcement provision, 29 U.S.C. § 2617(a), employees may sue for violations of 29 U.S.C. § 2615. Section 2615 gives rise to two theories of recovery for FMLA claims, the entitlement or interference theory and the retaliation or discrimination theory. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). The entitlement or interference theory arises from § 2615(a)(1), which provides: "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." The retaliation or discrimination theory is rooted in § 2615(a)(2): "It shall be unlawful for any employer to discharge or in

-5-

any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

In this case, Ms. Satterlee's claim that AP interfered with her rights under the FMLA by terminating her while she was on FMLA leave arises under 2615(a)(1)'s entitlement or interference theory.  Section 2615(a)(1) is also the statutory basis for Ms. Satterlee's claim that she was entitled to restoration as an AP employee when she applied for an administrative support specialist position seven months after her termination.  Ms. Satterlee's retaliation claim arises under § 2615(a)(2).  We consider each of these claims in turn.

**1.    Ms. Satterlee's Entitlement or Interference Claims**

"The interference or entitlement theory is derived from the FMLA's creation of substantive rights.  If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation *regardless of the employer's intent*."  *Smith*, 298 F.3d at 960 (emphasis added). "To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

Here, the two sides disagree about whether Ms. Satterlee has presented

evidence sufficient to show that she was entitled to FMLA leave. Without deciding whether Ms. Satterlee has presented enough evidence for a reasonable trier of fact to conclude that she was entitled to FMLA leave, we find that AP was entitled to judgment as a matter of law with respect to both of Ms. Satterlee's interference or entitlement claims because she has not put forward evidence of a causal relationship between her termination or AP's failure to rehire her and any alleged entitlement to FMLA leave.

We have explained that an employee who requests FMLA leave has "no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request" and "has no greater rights than an employee who remains at work." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998). Thus, an employee who is entitled to FMLA leave may nevertheless be terminated if there is no causal connection between the termination and her rights under the FMLA.

In this case, AP has established that Ms. Satterlee's employment would have been terminated and that she would not have been rehired regardless of her alleged entitlement to FMLA leave. It is undisputed that five positions were to be eliminated in Ms. Satterlee's department. Ms. Pickel testified that she chose to terminate Ms. Satterlee because the latter had not proven adept in developing office skills and seemed ill-suited to take on responsibilities in handling the

company's information system. In fact, Ms. Satterlee reported to Ms. Pickel that she was not especially comfortable in an office environment. The individuals who were retained at Ms. Satterlee's position had been with the company for a longer period of time than Ms. Satterlee, and had received more positive evaluations from Mr. MacEwan and other employees.

Ms. Satterlee urges that the timing of her firing, which occurred during her leave, is evidence of a causal relationship between her vested rights under the FMLA and her termination. Indeed, "protected conduct [under the FMLA] closely followed by an adverse action" may be evidence of causation. *Marx v. Schnuck Markets*, 76 F.3d 324, 329 (10th Cir. 1996). However, the facts in this case do not merit such an inference. Notably, Ms. Satterlee failed to introduce evidence that Ms. Pickel, the person responsible for determining which employees should be fired, had any knowledge of Ms. Satterlee's possible entitlement to FMLA at the time Ms. Pickel made her decision. Ms. Pickel testified that she finalized her decision to fire Ms. Satterlee on February 25, 2003, and communicated the decision to Ms. Murphy in AP's human resources department. On February 26, 2003, Mr. MacEwan, apparently unaware of Ms. Satterlee's impending termination, informed Ms. Pickel, via email, that Ms. Satterlee would miss a few days of work for her nose surgery. On February 27, 2003, Ms. Pickel informed Mr. MacEwan that Ms. Satterlee was to be terminated the next day. In short, there is no evidence that the person solely responsible for the decision to

-8-

fire Ms. Satterlee had any idea that she might be entitled to FMLA leave. Thus, Ms. Satterlee's claim that her termination interfered with her right to FMLA leave fails because she has not put forward evidence to contradict AP's assertion that she was scheduled to be fired for reasons entirely unrelated to her health-related leave.

Similarly, Ms. Satterlee's claim that AP's decision not to rehire her in September 2003 interfered with her rights under the FMLA fails because she has not shown any causal connection between AP's decision and her prior health-related leave. According to Mr. MacEwan, the position for which Ms. Satterlee applied would have required Ms. Satterlee to take on even more computer-related responsibilities than she had previously enjoyed, and, in Mr. MacEwan's estimation, she was not capable of holding the position. Ms. Satterlee introduced no evidence to contradict this claim.

## 2. Retaliation

In order to establish a *prima facie* case for retaliation under § 2615(a)(2), Ms. Satterlee must demonstrate that "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). A plaintiff's establishment of a *prima facie* case for retaliation gives rise to a presumption of retaliation. *Morgan*, 108 F.3d at 1323. The defendant (AP), then must produce evidence that the

employee's termination came about as the result of a legitimate, nondiscriminatory reason. *Id.* If the defendant offers a legitimate reason for the plaintiff's dismissal, then the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual. *Id. See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Ms. Satterlee has not made out a *prima facie* case for retaliation. As we established in our discussion of her entitlement or interference claims, she has not presented evidence of a causal connection between her termination and her health-related absence from work. However, even if we were to assume that she could put forward enough evidence to give rise to a presumption of retaliation, she cannot prove that AP's proffered rationale for terminating her employment was pretextual.

In evaluating Ms. Satterlee's evidence of pretext for summary judgment purposes, we ask whether the non-discriminatory reason offered by AP was "so weak that a rational factfinder could infer that the expressed reason for terminating [Ms. Satterlee] must have been pretextual." *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004). A plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory

reasons." *Id.* (internal quotation marks omitted). "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Here, it is undisputed that AP had determined to eliminate several positions in Ms. Satterlee's department. Ms. Satterlee has not introduced evidence that AP's explanation that her employment was terminated because she was inefficient and unable to master new tasks was pretextual. Nor has Ms. Satterlee been able to expose any inconsistencies or contradictions in AP's reasoning.

## III. CONCLUSION

For reasons provided above, we AFFIRM the district court's dismissal of Ms. Satterlee's FMLA claims.

Entered for the Court,

Robert H. Henry
United States Circuit Judge

-11-