Deanna F. PORTER, Plaintiff,

v.

STATE OF KANSAS, Topeka State Hospital and Topeka Youth Center, Defendants.

Civ. A. No. 89–4272–S.

United States District Court, D. Kansas.

Feb. 28, 1991.

Elmer J. Schumacher, Topeka, Kan., for plaintiff.

Linda J. Kelly, SRS Legal Div., Jan H. Maxwell, Topeka State Hosp. Legal Services, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and defendants' motion for summary judgment. To the court's knowledge, plaintiff is no longer seeking to proceed with this case as a class action; thus, defendants' motion for denial of certification of class action will be denied as moot. In this employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., plaintiff Deanna Porter, a Black female, contends that she was not hired for a position at the Topeka Youth Center because of her race and/or sex. Plaintiff also claims that she was terminated from her position as a psychiatric aide at Topeka State Hospital because of her race and/or sex.

*Defendants' Motion to Dismiss: Failure to Exhaust*

Defendants contend that plaintiff's Title VII claims should be dismissed for failure to exhaust her administrative remedies. Specifically, defendants contend that plaintiff's "failure to hire" claim against the Topeka Youth Center ("YCAT") must be dismissed because, although plaintiff filed a discrimination complaint with the Topeka Human Relations Commission (which she later withdrew), plaintiff did not file a discrimination charge with either the Kansas Commission on Civil Rights ("KCCR"), or the Equal Employment Opportunity Commission ("EEOC"). With regard to plaintiff's Title VII claim against Topeka State Hospital ("TSH") in connection with her discharge, defendants contend she is barred from pursuing this action in this court because of her failure to receive a determination from the Civil Service Board on the merits of her dismissal and to appeal any adverse decision of the Board.

Filing of a timely charge of discrimination with the proper administrative agency is a prerequisite to filing a Title VII action in federal district court. *Carter v. Sedgwick County,* 705 F.Supp. 1474, 1477 (D.Kan.1988); 42 U.S.C. §§ 2000e–5(e), –5(f). *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) ("a discriminatory act which is not made the basis of a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed"). In this case, it is undisputed that plaintiff's claim that she was not hired for the position at YCAT based upon her race and/or sex was never made the subject of a timely discrimination charge with either the KCCR or the EEOC. The court finds that plaintiff's filing of a discrimination complaint with the Human Relations Commission of the City of Topeka, a complaint which was not forwarded to the KCCR or the EEOC and which was later closed upon plaintiff's request, does not satisfy the charge-filing requirements of Title VII because, in Kansas, discrimination charges are to be filed with the KCCR. *See* 42 U.S.C. §§ 2000e–5(c), –5(d), –5(e); K.S.A. 44–1001 *et seq.;* 29 C.F.R. § 1601.74(a). Thus, plaintiff's Title VII claim against defendant Topeka Youth Center for failure to hire will be dismissed for failure to exhaust administrative remedies.

■ The court will not, however, dismiss plaintiff's Title VII claim against TSH on exhaustion of remedies grounds. Plaintiff apparently did file a timely discrimination charge based upon this claim with the EEOC. Although plaintiff could have pursued her claim based upon her discharge through the Kansas Civil Service Board, the court does not read the authorities cited by defendants, *i.e., Mattox v. Department of Transp.*, 12 Kan.App.2d 403, 747 P.2d 174 (1987), *Parker v. Kansas Neurological Inst.*, 13 Kan.App.2d 685, 778 P.2d 390 (1989), and *Scroggins v. State of Kansas Dept. of Human Resources*, 802 F.2d 1289 (10th Cir.1986), as standing for the proposition that Title VII requires plaintiff to pursue her civil service remedies as a prerequisite for filing suit in this court. Thus, the court will not grant defendant's motion to dismiss plaintiff's claim against TSH for failure to exhaust.

*Defendant's Motion for Summary Judgment*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of material fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

Because plaintiff has not controverted defendants' statement of facts as required by Local Rule 206(c), defendants' statement of facts is deemed admitted. Thus, the court finds the following facts relevant to plaintiff's discharge from employment at TSH are not genuinely controverted. Plaintiff Deanna Porter was a permanent employee of Topeka State Hospital; specifically, Porter was employed as a psychiatric aide. On occasion, psychiatric aides may be required to restrain and/or seclude patients in order to prevent patients from injuring themselves. Restraining or secluding a patient can involve the lifting of more than 40 pounds. During the course of her employment at Topeka State Hospital, Porter became pregnant and received a statement from her doctor, Robert Pfuetze, on January 8, 1988. The doctor's statement stated "She may continue working but should not do heavy lifting (more than 40 lbs)."

On February 2, 1988, Dr. W.L. Coker became Porter's treating physician. On March 2, 1988, Fran Seymour, R.N., who worked as a "section Nurse for Adult Projects" at Topeka State Hospital and supervised Carolyn Brockway, who in turn supervised Porter, was made aware that Porter had submitted the doctor's statement containing the notation that Porter should not lift more than 40 pounds. After checking with the Assistant Director of Nursing, Celia Yohr, Seymour met with Porter on March 4, 1988, and told her that there were no "light duty" assignments at Topeka State Hospital. On March 16, 1988, Seymour met again with Porter and with the Director of Nursing, Karen Thompson, R.N. At that time, Porter was told that she should either see if her doctor would lift the restriction or take a leave of absence.

On March 17, 1988, Seymour and Mary Ann Andes Richardson, who was employed in the TSH Payroll Department, met with Porter and Tommy Green, a friend of Porter's. At that meeting, Porter was again informed that she would have to have the restriction lifted or take a leave of absence. Also on March 17, 1988, Porter and Green met with Donald J. Pesmark, Director of Personnel. Pesmark told Porter that she had the options of requesting another doctor statement, requesting a leave of absence, or signing a statement agreeing to work with risk of injury. After being told she could not work with the lifting restriction in place, Porter was sent home. After March 17, 1988, Porter did not work at TSH. Porter did not request a leave of absence. On March 22, 1988, Dr. Coker saw Porter and at that time wrote a statement which is included in Porter's medical file that states that plaintiff could do lifting up to 120 pounds. Although the parties do not attempt to clarify this point, plaintiff apparently never provided the Coker statement to TSH. Effective April 29, 1988, Porter "was resigned" (*i.e.*, discharged) from her employment at TSH for failure to return to work.

As a relevant additional fact, defendants state that Jayne Penry, a white female licensed mental health technician, was moved during her pregnancy from her regular ward to the "PAR Unit." The reason for the transfer, which Penry neither requested nor wanted, was that one of the patients in her former ward had attacked Penry several times.

*Plaintiff's Race Discrimination Claim: Discharge*

■ Defendants contend that plaintiff has failed to come forward with a prima facie case of discrimination based upon her race in connection with her discharge from TSH. Section 703(a)(1) of the Civil Rights Act of 1964 makes it illegal "to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In absence of direct evidence of illegal animus, the three-step model of proof set out in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), has been adapted as a method of proving illegal motivation in discharge situations. Plaintiff establishes a prima facie case of racial discrimination in termination where she proves by a preponderance of the evidence that she is a member of a protected class and was discharged while a person outside the class with equal or less qualifications was retained. *Perryman v. Johnson Prod. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983). *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ Specifically, a plaintiff may establish a prima facie case of racially discriminatory discharge by showing that (1) she belongs to a racial minority; (2) she was performing in a satisfactory manner; (3) that she was discharged despite her satisfactory performance and (4) that someone was hired in her place after she was discharged. *See Brown v. Parker–Hannifin Corp.*, 746 F.2d 1407, 1410 (10th Cir.1984). The burden of production then shifts to the defendant to articulate legitimate and legally sufficient nondiscriminatory reasons for its behavior; plaintiff must then prove by a preponderance of the evidence that defendant's proffered explanations are pretextual. *See, e.g., Morrison v. Booth*, 763 F.2d 1366, 1371 (11th Cir.1985). *See also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981).

■ The court finds that plaintiff has failed to establish a prima facie case of racial discrimination in connection with her discharge from employment at TSH. Although plaintiff is a member of a racial minority, *i.e.*, Black, she has not come forward with evidence regarding the other three above-stated required elements of a prima facie case. Most importantly, however, other than conclusory allegations in her complaint and other pleadings, Porter has not provided either reasons or evidence in support of any claim that her discharge was racially-motivated. In fact, in her deposition and her response to defendants' summary judgment motion, she argues only that her discharge was because of her pregnancy. Moreover, even assuming, *ar-*

*guendo*, that plaintiff could make out a prima facie case of racially discriminatory discharge, she has failed to come forward with any evidence that the employer's stated reasons for the discharge (*i.e.*, failure to either sign a release of liability concerning the pregnancy-related work restriction, to provide a physician's statement lifting the work restriction, or to request a leave of absence, and finally, plaintiff's failure to appear for work for six weeks), which the court finds to be legitimate, non-racially discriminatory reasons on their face, were pretextual.[1] Accordingly, defendants' motion for summary judgment on plaintiff's claim of racial discrimination in her discharge from TSH will be granted.

### Plaintiff's Sex Discrimination Claim: Discharge

■ The focus of Porter's claim in connection with her discharge is that she was discriminated against because of her pregnancy. On October 31, 1978, President Carter signed into law the Pregnancy Discrimination Act (Pub.L. 95–555, 92 Stat. 2076, codified at 42 U.S.C. § 2000e(k)). The Act amends Title VII of the 1964 Civil Rights Act, providing, in relevant part:

> The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .

42 U.S.C. § 2000e(k). Thus, this amendment clarifies that the sex discrimination prohibited by Title VII includes discrimination based upon pregnancy, childbirth, or related medical conditions. *See Fancher v. Veterans Admin. Med. Center*, 507

F.Supp. 124, 126–27 (E.D.Ark.1981); Questions and Answers on the Pregnancy Discrimination Act, 29 C.F.R. § 1604 app.

■ In her response to defendants' summary judgment motion, Porter advances three contentions in support of her sex discrimination claim. First, she contends that she was terminated for refusing to sign a release limiting liability in the event she was injured working while under the physician's restriction on lifting more than 40 pounds; she contends that other employees were not required to sign such releases. Second, she contends that the psychiatric aide position did not require lifting more than fifty pounds. Third, she states that Dr. Pfuetze's statement that she "should not do heavy lifting (more than 40 lbs)," was a recommendation, not a restriction on her activities. Fourth, she argues that federal law prohibits restrictive employment practices (such as the lifting requirement here) "without scientific proof and business necessity." Plaintiff's "Reply," at 2.

With regard to plaintiff's first contention, the court finds that Porter has presented no evidence to the effect either that all pregnant women were required to sign releases as a condition of employment or that only pregnant women were required to sign such releases. Thus, Porter has not shown that pregnant women were treated differently than was any other employee under a doctor's restriction. As to Porter's second contention, Porter admitted in her deposition that the psychiatric aide position could occasionally require the ability to do heavy lifting in the event a patient had to be restrained. Nor does she contradict the evidence presented by defendant that there were no "light-duty" positions at Topeka State Hospital. Third, the court finds that the doctor's statement from Dr. Pfuetze can on its face be reasonably interpreted as a restriction on plaintiff's activities; further, Dr. Pfuetze's affidavit, as presented by defendants, states that the

---

1. Although plaintiff does not present this argument at all, defendants do discuss the case of another pregnant woman at TSH, Jayne Penry. Penry, who was white, was transferred from one ward where she was being attacked by a specific patient to a different ward. Penry did not, however, have any doctor's restriction, nor was she given "light duty" or discharged during her pregnancy. The court finds nothing in the Penry transfer incident to support plaintiff's race discrimination claim.

statement was intended by him to be taken as a restriction, and plaintiff in her deposition admitted that she herself interpreted the doctor's statement to mean that she should not lift more than 40 pounds.

■■■■ To the extent that plaintiff appears to be attempting to employ a disparate impact theory of recovery, plaintiff can establish a prima facie case of sex discrimination by showing that a facially neutral plan or classification had the effect of discriminating against women as a class. *See Zuniga v. Kleberg County Hosp.*, 692 F.2d 986, 990 (5th Cir.1982) (citations omitted). "Once the employee establishes a prima facie case, the burden shifts to the employer to show that the discriminatory practice is a 'business necessity,' ... 'necessary to safe and efficient job performance.'" *Id.* (citations omitted). The employee can then overcome the employer's defense by proving that the stated business necessity is merely a pretext for discrimination. *Id.* (citations omitted).

■■■■ The court finds that the rule being enforced by TSH, *i.e.*, a person in the position of a psychiatric aide should be able to lift more than 40 pounds, is facially-neutral with regard to pregnancy. The court however finds that plaintiff has not demonstrated that the requirement that persons employed as psychiatric aides be able to lift more than 40 pounds has the effect of discriminating against women, or even pregnant women, as a class. To the contrary, it is undisputed that another pregnant woman, Jayne Penry, had no doctor's restriction regarding heavy lifting during her pregnancy and continued to work at TSH notwithstanding her pregnancy. Further, it is similarly undisputed that plaintiff's own restrictions regarding lifting more than 40 pounds of weight were removed by her new treating physician, Dr. Coker, during her pregnancy and before her discharge. Why plaintiff never presented a statement to TSH from Dr. Coker lifting the weight restrictions before her discharge is unexplained. Thus, plaintiff has not shown that the requirement that psychiatric aides be able to lift more than 40 pounds has the discriminatory effect of burdening women as a class.

Further, even assuming an impact on pregnant women, plaintiff has not countered defendants' argument that the requirement is justified by TSH's stated "business necessity" reason that this ability is required because personnel in plaintiff's position of a psychiatric aide are sometimes required to help restrain patients. *See Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245, 249 (10th Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971) (a neutral employment policy which is inherently discriminatory may nevertheless be valid under Title VII if it has a business justification and is necessary to the safe and efficient operation of the business). Although plaintiff argues that the ability to lift was not a part of her job description and was not required on a daily basis, she concedes in her deposition that such an ability could be called into play on occasion to restrain a patient, and she produces no other evidence in support of her argument that this ability was not "reasonably necessary;" thus, the required ability seems reasonably necessary to job performance as a psychiatric aide at TSH. Not only does plaintiff fail to come forward with sufficient evidence to rebut defendants' stated justification for the requirement and create a triable issue of pretext, but because on the undisputed facts she failed to avail herself of other options made available to her at TSH, she cannot demonstrate pretext in that way. *Cf., Zuniga*, 692 F.2d at 992 (plaintiff may rebut an employer's stated business necessity defense by showing that the employer failed to utilize an available, alternative, less discriminatory means of achieving its business purpose).

In short, the court finds that plaintiff has presented nothing to suggest that defendants treated pregnancy any differently than any other medical condition affecting or limiting an individual's ability to lift. See 29 C.F.R. § 1604 app. (Pregnancy Discrimination Act only requires an employer to treat an employee who is temporarily unable to do their job because of a pregnancy-related condition in the same manner

as the employer treats other temporarily disabled employees). Thus, defendants' motion for summary judgment with regard to plaintiff's sex discrimination claim in connection with her discharge from TSH will be granted by the court.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion to deny class certification is moot, and is therefore denied.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's Title VII claim based on defendant Topeka Youth Center's failure to hire plaintiff for a position is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's Title VII race and sex discrimination claims against Topeka State Hospital in connection with plaintiff's discharge from employment is also granted.