Brenda D. **PARKER**, Plaintiff,

v.

**ALBERTSON'S, INC.**, Defendant.

No. 1:03 CV 010 JTG.

United States District Court,
D. Utah,
Central Division.

July 8, 2004.

Ms. Mary Anne Q. Wood, Wood Crapo LLC, Salt Lake City, UT, for plaintiff.

Gregory W. Stevens, Salt Lake City, UT, for defendant.

## MEMORANDUM DECISION and ORDER

### J. THOMAS GREENE, District Judge.

This matter comes before the Court on defendant's Motion for Summary Judgment. Defendant moved for summary judgment on plaintiff's claims of Discrimination in violation of the Americans with Disabilities Act ("ADA"), Discrimination in violation of Title VII of the Civil Rights Act of 1964 and Pregnancy Discrimination Act ("PDA"), Retaliation in violation of Title VII of the Civil Rights Act of 1964 and PDA, and Retaliation in violation of the ADA. Plaintiff responded, oral argument on the motion was heard, and the matter was taken under advisement. Now after full consideration, the Court enters its Memorandum Decision and Order.

### Factual Background

Brenda Parker ("plaintiff") was hired on December 6, 1999, as a mail room clerk for Albertson's ("defendant") at its Salt Lake distribution center. Plaintiff was responsible for sorting, receiving and sending mail, including packages, order guides, and other correspondence. Plaintiff's job description required that she "must frequently lift up to 50 lbs." At some centers the required lifting of up to 50 pounds included carrying items up and down stairs. Plaintiff regularly packed and shipped such mail to over 117 of defendant's stores. On the busiest days of the week plaintiff would receive assistance from individuals working in the adjacent computer room for a couple of hours to ensure that the mail was ready for delivery. Once the packages were put together they were placed on a pallet by plaintiff or computer room employees and taken by forklift downstairs to be placed into bins for delivery.

On January 24, 2001, plaintiff met with her physician who confirmed that she was pregnant. Plaintiff's physician instructed her not to lift more than 20 pounds. Accordingly, on that same date plaintiff informed Glenn Leary and Curtis Walker, her supervisors, that she was pregnant and would not be able to lift more than 20 pounds. Leary and Walker requested a physician's note, and Walker promised to make himself available to lift all packages over 20 pounds. Plaintiff obtained the physician's note and provided it to Walker on January 26, 2001. Plaintiff then met with the manager of Human Resources, Fran Meyer, who stated that she would need to speak to corporate headquarters about plaintiff's condition and diminished lifting arrangement. During this conversation, Meyer asked her if the pregnancy was "high risk", to which plaintiff answered "yes", and stated that her doctor had given her medication to maintain the pregnancy. In further discussions, plaintiff told Leary, Walker, and Fran Meyer that she wanted an accommodation for her pregnancy. Three days after providing the letter from her physician and meeting

with Meyer regarding her pregnancy, plaintiff was terminated.

On February 8, 2001, plaintiff lodged a complaint on defendant's employee hotline objecting to her termination. On February 9, 2001, Hewell, defendant's Labor Relations Supervisor, spoke to plaintiff and told her that her job required heavy lifting, but that she could be placed on general leave for six months, with the option of applying for another position at that time—if one was available. About one month later, as a result of discussions, defendant offered plaintiff a receptionist position at lower pay with the proviso that, plaintiff would have to wait 90 days before her benefits would be in place. Plaintiff rejected the position because the defendant would not "bridge the gap" so as to maintain health care benefits, and that the job would be for lower pay.

On March 5, 2001, plaintiff filled out a General Intake Questionnaire with the Utah Anti–Discrimination and Labor Division ("UALD"). On the form, plaintiff stated that her discrimination was due to pregnancy. In the part of the form regarding disability discrimination, plaintiff responded "pregnancy, weight restriction." In the part of the UALD prepared form regarding "sex", plaintiff marked the box and set forth the following charge:

> On January 26, 2001, as a result of being pregnant, I gave a doctor's note to my supervisor stating that I was restricted from lifting no more that 20 pounds. Later I was told by management that since I could not perform the lifting required, they had to let me go. I complained and I was offered general leave (6 months), but I had to reapply after that time period. Other employees offered to trade jobs with me, as an offer of accommodation but management refused. I believe I was treated differently because of my gender and because I'm pregnant.

(P. Res.p.xxi.) On March 14, 2001, plaintiff filed the aforesaid Charge of Discrimination, marking the box for "sex" as the Cause of Discrimination, but failed to mark either the box for "retaliation" or the box for "disability".

After it became apparent that the matter remained unresolved, UALD referred the matter to investigations. On June 8, 2001, plaintiff submitted a letter and Affidavit to the UALD asking the UALD to revise the charges based upon the facts of the Affidavit, a copy of which was also sent to the defendant. Defendant then submitted to the UALD a response, dated August 6, 2001, stating that lifting up to 50 pounds was an "essential function" of plaintiff's job, and that assigning computer operators to assist plaintiff was not a viable long term solution. In her reply to the UALD, plaintiff referred to her "disability discrimination pending with your agency" and stated she sought a "reasonable accommodation" for her "pregnancy-related disability."

On July 11, 2001, UALD issued a Determination and Order, finding reasonable cause to believe that plaintiff had been subjected to discriminatory termination. In mid-August, defendant sought an appeal of the UALD decision and requested an Evidentiary Hearing. In September, defendant was provided with copies of all documents in the UALD file. In November, plaintiff requested a Notice of Right to Sue, and the UALD issued such a letter. The evidentiary hearing which had been requested before the UALD was not held, and plaintiff filed this lawsuit.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the evidence presented "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). In determining whether the evidence weighs heavily enough in favor of one party that summary disposition is merited, "the court views the record and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Jeffries v. Kansas*, 147 F.3d 1220, 1228 (10th Cir.1998).

## I. DISCRIMINATION BASED ON PREGNANCY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND PREGNANCY DISCRIMINATION ACT.

### A. Sex Discrimination Includes Pregnancy.

Title VII of the Civil Rights Act of 1964 prohibits, among other things, unlawful employment discrimination on the basis of an individual's sex. *See* 42 U.S.C. § 2000e–2. In 1976, the Supreme Court held that an employer's disability plan did not violate Title VII even though it excluded pregnancy-related disabilities. *See General Elec. Co. v. Gilbert*, 429 U.S. 125, 140–41, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). In response to *Gilbert*, Congress passed the Pregnancy Discrimination Act ("PDA"). *See* Pub.L. No. 95–555, 92 Stat. 2076 (1978) (codified at 42 U.S.C. § 2000e(k)); *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678–79 & nn. 15–17, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (discussing legislative history of the PDA). Pursuant to the PDA, the definitional section of Title VII was amended by the addition of the following language:

> The terms "because of sex" or "on the basis of sex" *include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions* shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not

so affected but similar in their ability or inability to work. . . .

42 U.S.C. § 2000e(k) (emphasis added). *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190–91 (10th Cir. 2000).

### B. PDA Claims Analyzed the Same as Other Title VII Claims

Claims brought under the PDA are analyzed in the same way as other Title VII claims of disparate treatment. A plaintiff who lacks direct evidence of intentional discrimination under Title VII may use the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to demonstrate intentional discrimination. *E.E.O.C. v. Horizon*, 220 F.3d at 1191 (additional citations omitted).

A plaintiff relying on the *McDonnell Douglas* framework bears the initial burden of establishing a prima facie case. Once a prima facie case is established, a rebuttable presumption that the defendant unlawfully discriminated against her exists. *E.E.O.C. v. Horizon*, 220 F.3d at 1191 *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant articulates a facially nondiscriminatory reason for the adverse employment action, the plaintiff can avoid summary judgment only if she can show that her "pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext." *E.E.O.C. v. Horizon*, 220 F.3d at 1191

*quoting Atchley v. Nordam Group, Inc.,* 180 F.3d 1143, 1148–49 (10th Cir.1999).

■ At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is *only* required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant. *E.E.O.C. v. Horizon/CMS Healthcare Corp.,* 220 F.3d at 1193; *see also MacDonald v. Eastern Wyo. Mental Health Ctr.,* 941 F.2d 1115, 1119 (10th Cir.1991). In *E.E.O.C. v. Horizon/CMS Healthcare Corp.,* the Tenth Circuit held:

> When an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case. To hold otherwise would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual.

220 F.3d at 1193. The court continued:

> Thus, to meet its prima facie burden, the [plaintiff] need only present some credible evidence that the [plaintiff] possessed the basic skills necessary to perform the modified-duty assignment[ ] . . . sought.

*Id.* at 1194.

■ A plaintiff establishes pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* 220 F.3d at 1195 *quoting Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1317 (10th Cir.1999). Evidence sufficient to raise a genuine question whether an em-

ployer's proffered explanation is pretextual may "take a variety of forms." *Id. quoting Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

## C. Elements of a PDA Claim

■ To establish a prima facie case of disparate treatment on the basis of her pregnancy, plaintiff must show that: (1) she is a member of a protected group; (2) she qualified for the modified-duty positions sought; (3) she was denied modified-duty positions; and (4) she was denied the modified-duty assignments "under circumstances which give rise to an inference of unlawful discrimination." *E.E.O.C. v. Horizon,* 220 F.3d at 1192. Discrimination claims based on a defendant's refusal to place a plaintiff in a modified-duty assignments are analogous to those cases presenting failure-to-hire or failure-to-promote claims. *E.E.O.C. v. Horizon,* 220 F.3d at 1192.

In the case at bar, defendant argues that plaintiffs claim of discrimination should be dismissed because she cannot establish a prima facie case of discrimination under Title VII. Defendant concedes that plaintiff can meet the first two criteria, (1) she belonged to a protected class and (2) she was adversely affected by the employer's action. However, defendant argues that plaintiff fails to meet the last two requirements, (3) she was qualified for the position and (4) she was treated less favorable than non-pregnant counterparts. (D.Memo.p.5–6.)

Defendant argues that the 20 pound lifting restriction is contrary to plaintiff's job description as part of plaintiff's daily routine, so that plaintiff was no longer qualified for the position. In support of this argument the defendant relies on *Porter v. Kansas,* 757 F.Supp. 1224 (D.Kan.1991), arguing that in *Porter* the court granted

summary judgment against the plaintiff, a psychiatric nurse, when she was placed on a lifting restriction of less than 40 pounds after she became pregnant. However, in *Porter,* the court held that plaintiff failed to come forward with evidence to rebut the defendant's stated justification and create a triable issue of pretext by showing that the defendant treated her different than any other individuals. Also, in *Porter* that plaintiff failed to show that the employer failed to utilize an available alternative, less discriminatory means of achieving its business purpose, unlike this plaintiff who claims defendant failed to place her in a modified-duty assignment or transferring her to another position. *See Porter v. Kansas,* 757 F.Supp. 1224, 1230–31.

Defendant also argues that plaintiff cannot show that she was treated less favorable than similarity situated employees of the defendant. Defendant claims

> [plaintiff] cannot point to a single non-pregnant employee whose position required lifting, who became subject to a lifting restriction, who was given an assistant to perform the lifting, instead of being terminated. In fact, [plaintiff] cannot point to a single employee who was similarly situated to her.

(D.Memo.p.8.) Defendant relies on *Holmes v. Regents of the University of Colorado,* 176 F.3d 488, 1999 WL 285826 (10th Cir.) (unpublished opinion), for the proposition that a plaintiff fails to meet a prima facie case sufficient to shift the burden to the defendant when the plaintiff relies on her own unsupported conclusions about differences between her and others and how they are similarly situated. However, in *Holmes,* the court's holding centered on the fact that plaintiff's allegations that white male professors were "rubber stamped" and received better treatment was undermined by the fact that she was the highest paid faculty member of her department; thus, the court found she failed to shift the burden back to the defendant. *Id.* at *6.

Plaintiff contends that she has produced more than sufficient evidence that she was qualified for a modified or light duty assignment. One, a switchboard employee offered to switch positions with plaintiff during her pregnancy, a job that plaintiff contends she could perform. Two, computer operators frequently and regularly assisted plaintiff with her heavy lifting duties before and after she gave notice of her pregnancy, and there is no evidence to suggest that plaintiff could not have in turn assisted them in order to take up any slack created by the assistance. Three, plaintiff could have been assigned another position within the defendant's company. Plaintiff asserts that defendant admits it made no effort to determine if positions were available within Albertson's outside of the Distribution Center.

Additionally, plaintiff contends that defendant's denial of a modified duty or light duty gives rise to an inference of unlawful discrimination. Plaintiff contends that defendant has a practice of offering light duty or modified duty positions, or to transfer to another position, to employees injured on the job in order to save workers' compensation costs. In addition, plaintiff argues that defendant's evidence of other employee's terminated due to lifting restrictions were inaccurate because those employees had permanent lifting restrictions, not temporary, and were terminated in 1999 and 2000, not in 2001 when plaintiff sought a reasonable accommodation.

## D. Essential Issue in Dispute: Failure to Offer Modified Work Assignment—Pretext

■ Defendant concedes that plaintiff was denied a modified work assignment (or transfer) during her pregnancy. Thus, the dispute is whether the defendant's

practice to allow employees with "on the job" injuries to have a transfer or modified duty assignment creates a pretext of discrimination because plaintiff was never considered for a transfer or modified or light duty assignment.

In *E.E.O.C. v. Horizon*, the court applied the fourth element articulated by defendant (limiting the standard to only those non-pregnant employees injured off the job) *only* because the Commission had met its burden even under that standard. The court stated "that adopting the approach advocated by defendant would lead to the same danger of compressing the three stages of the *McDonnell Douglas* analysis." *E.E.O.C. v. Horizon*, 220 F.3d at 1195. The court also noted that "[n]othing in the case law in this circuit requires a plaintiff to compare herself to similarly-situated co-workers to satisfy the fourth element of her prima facie case. A plaintiff alleging discrimination in violation of Title VII can satisfy the fourth element of her prima facie case in a number of ways." *Id.* at 1195, n. 6. Furthermore,

> [e]vidence that pregnant women were treated differently than other temporarily-disabled employees, left unexplained, is sufficient to raise an inference of illegal discrimination at the prima facie stage.... If a plaintiff is compared only to non-pregnant employees injured off the job, her case would be "short circuited" at the prima facie stage and she would be denied the opportunity to show that the policy, which may be facially

neutral, is actually a pretext for unlawful discrimination.

*Id.* at 1195, n. 7.[1]

Defendant argues that *E.E.O.C. v. Horizon* is not applicable because unlike the Temporary Alternative Work ("TAW") program in Horizon, defendant's program only allows for temporary duties for 120 days, and plaintiff's pregnancy lasts far longer than 120 days, therefore not qualifying plaintiff for consideration. However, this type of policy is the exact concern expressed by the Tenth Circuit in *E.E.O.C. v. Horizon*. If a plaintiff is compared only to non-pregnant employees injured off the job, her case would be "short circuited" at the prima facie stage and she would be denied the opportunity to show that the policy, which may be facially neutral, is actually a pretext for unlawful discrimination. The court stated that to find otherwise would allow an employer to adopt a modified duty policy, or a TAW program in this case, as a method of ensuring that it would be able to terminate pregnant women with work restrictions while at the same time ensuring that it could retain other temporarily-disabled employees. 220 F.3d at 1195, n. 7; see also *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119 (10th Cir.1991).

Under the *McDonnell Douglas* analysis, plaintiff is only required to raise an inference of discrimination, not dispel all of the non-discriminatory reasons subsequently proffered by the defendant. *E.E.O.C. v. Horizon*, 220 F.3d at 1193; *see also MacDonald*, 941 F.2d at 1119. Also, in *Butler*

---

1. In *dicta*, the court stated that "the better approach would be to hold that a plaintiff had satisfied the fourth element of her prima facie case by showing that she was treated differently than a non-pregnant, temporarily-disabled employee." *Explaining by example* that "an employer could adopt a policy, similar to the Modified Duty Policy, as a method of ensuring that it would be able to terminate

pregnant women with work restrictions while, at the same time, ensuring that it could retain other temporarily-disabled employees," and thus, a plaintiff would be left without an opportunity to show that the defendant's real reason for the policy was to discriminate against pregnant women. *E.E.O.C. v. Horizon*, 220 F.3d at 1195, n. 7.

*v. City of Prairie Village*, 172 F.3d 736, 749 (10th Cir.1999), the court found the sequence of events leading to a discharge may contribute to a permissible inference of discriminatory intent. Defendant's argument that taking personnel from the computer room to assist with lifting was not a long term solution fails to remove the pretext due to the fact that both parties agree this was already done, although they dispute the extent of the assistance, and because pregnancy is not long term disability and as such it should not be an undue hardship for defendant.

The alleged acts and conduct of the defendant are laden with material facts in dispute. These include but are not limited to defendant's failure to consider or offer to plaintiff a modified duty assignment or a job transfer; plaintiff's termination within three days of notice of her pregnancy; plaintiff's termination without seeking alternatives outside the Distribution Center; and defendant's failure to consider plaintiff for a TAW program. It is apparent from the record that there is sufficient evidentiary support of this Court's finding that plaintiff has met her burden under the burden shifting analysis of *McDonnell Douglas* to establish a prima facie case of discrimination so as to withstand defendant's summary judgment motion.

## II. DISCRIMINATION BASED ON A DISABILITY IN VIOLATION OF THE ADA.

### A. Elements and Analysis

■ To establish a claim under the ADA, plaintiff must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified, i.e., able to perform the essential functions of the job, with or without reasonable accommodation; and (3) defendant discriminated against her in its employment decision because of her alleged disability. *Pack v. Kmart Corp.*, 166 F.3d 1300, 1304 (10th Cir.1999).

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to [the] ... discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless ... the accommodation would impose an undue hardship...." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■ The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The statutory requirement that disability determinations be made "with respect to the individual," contemplates an individualized, case-by-case determination of whether a given impairment substantially limits a major life activity of the individual. *Pack*, 166 F.3d at 1304 *citing Sutton v. United Air Lines*, 130 F.3d 893, 897–98 (10th Cir.1997).

■ A "major life activity" is a basic activity that the average person in the general population can perform with little or no difficulty. Major life activities include, but are not limited to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Sutton*, 130 F.3d at 900; *see also* 29 C.F.R. Part

1630, App. § 1630.2(i) (including sitting, standing, lifting, and reaching). "[T]he touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Pack,* 166 F.3d at 1305. Whether a particular activity is a "major life activity," we ask whether that activity is significant within the meaning of the ADA, rather than whether that activity is important to the particular individual. *Id.*

■ In order for a physical impairment to be "substantially limiting," the individual must be: (a) unable to perform a major life activity that the average person in the general population can perform; or (b) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *Id.; see also* 29 C.F.R. § 1630.2(j)(1); *Sutton,* 130 F.3d at 900; *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240 (10th Cir.2001).

In *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir.1996), the Tenth Circuit held that "lifting [was] a major life activity and that the evidence creates a genuine issue of material fact with respect to whether [plaintiff's] impairment substantially limits her ability to lift." Recently, in an unpublished opinion, *Velarde v. Associated Regional and University,* 61 Fed.Appx. 627, 2003 WL 1736400 (10th Cir.) (unpublished opinion), the Tenth Circuit held that the relevant question is whether Plaintiff's impairment "substantially limits" the major life activity of lifting. In *Velarde,* the court stated

that some impairments are substantially limiting on their face (e.g., in *Lowe,* the court found that a multiple sclerosis patient was disabled within the meaning of the ADA upon a showing that she could not lift more than fifteen pounds); however, the court held the twenty-five pound lifting restriction was not substantially limiting on its face.

## B. High Risk Pregnancy Not a "Disability"—Not a Substantial Limitation of a Major Life Activity

■ In the case at bar, defendant argues that the inability to lift heavy objects does not constitute a "substantial limitation" of a "major life activity." Plaintiff argues that her fertility difficulties, high risk pregnancy, her medical condition and resulting precautionary medical steps, including prescribed medications to support the fetus and physician imposed restriction on lifting, constitute a disability within the meaning of the ADA.[2] In addition to having to take medications due to difficulty with ovulation and conception as a result of Polycystic Ovary Syndrome ("PCOS"), plaintiff was placed on Prometrium (progesterone—female hormone produced by ovaries) in an effort to prevent a possible rejection of her fetus (miscarriage) in the first trimester by elevating her progesterone levels. Plaintiff argues that her doctor, Dr. Spencer, considered her to be a "high risk" pregnancy because of her risk of miscarriage in the first trimester and placed her on a lifting restriction to reduce the chances of a back injury and potential obstetric complications, including pre-term cervical dilation and labor as well as ruptured membranes.

**2.** Plaintiff argues that her inability to lift over 20 pounds constituted a "disability" within the meaning of the ADA. (P. Res.p.5–6.) Plaintiff argues that although pregnancy by itself does not equate to an impairment or disability, but pregnancy with impairments can rise to the level of a disability. *Citing* EEOC Compliance Manual § 902.2(c)(3) for the proposition that hypertension brought on by pregnancy is an example of a covered impairment.

The Court is not limited to deciding whether plaintiff is disabled within the meaning of the ADA solely upon the weight restriction amount. The combination of the lifting restriction and the additional evidence of plaintiff's medical condition must be considered under the ADA. The matter before the Court presents an emerging and changing area of the law. Specifically, whether the plaintiff's medical condition, whether her pregnancy was "normal" or "high risk", and the resulting restriction placed on plaintiff were substantial limitations on a major life activity. However, the record is clear that the medical restrictions taken in this case, at the time they were imposed, were precautionary. Plaintiff does not put forth evidence that she had a medical history of miscarriages or suffered from other related labor difficulties at the time of her termination, or how the restrictions resulted in substantial limitations in any other major life activity other than the sole claim of the lifting limitation.

The facts of this case before the Court clearly fall within the ambit of the PDA rather than the ADA.[3] That is not to say that a plaintiff could not have a PDA and ADA claim under the same set of facts, or that this plaintiff would not have an ADA claim if her condition had differed at the time of her termination or if there were addition substantial limitations on a major life activity. However, under the limited facts of this case, the plaintiff has failed to establish that she had a substantial limitation on a major life activity, and therefore plaintiff has not presented a prima facie case sufficient to withstand summary judgment.

### C. Retaliation Claim Under the ADA

Plaintiff's alleged factual statement in her Notice of Charge and supplemented submissions all sufficiently identified the discriminatory and retaliatory facts within the approximate time period to provide ample notice required under Gunnell.[4] Therefore, the Court has jurisdiction to entertain plaintiff's retaliation claims under the PDA and ADA. However, because plaintiff's ADA claim was insufficient to withstand summary judgment, plaintiff's retaliation claim under the ADA must also fail.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES—JURISDICTION—RETALIATION CLAIMS

#### A. Necessity to Exhaust

■ A plaintiff is required to file a timely charge of discrimination with the Equal Employment Opportunity Commission prior to filing a civil action under Title VII. See 42 U.S.C. § 2000e–5(e) and (f)(1) (1994). Federal courts lack jurisdiction to entertain Title VII claims unless such claims were previously filed with the Equal Employment Opportunity Commission. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir.1997).

■ The purpose of requiring administrative exhaustion is to give notice of alleged violation to charged party and to give EEOC an opportunity to conciliate the claim. Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998). The court in Gunnell held that a failure to mark the box is not dispositive, that said failure only creates a presumption that she was not asserting claims represented by boxes not checked. Id. citing Kristufek v. Hussmann Foodservice Co., 985 F.2d 364, 368 (7th Cir.1993); Hornsby v. Conoco, Inc., 777 F.2d 243, 247 (5th Cir.1985). In Gunnell, although the court found that the presumption was not rebutted by the actual prose of the plaintiff's

---

**3.** See supra Part I.A.

**4.** See infra Part III.A.

text, in that it did not allow for a reasonable reader to understand the assertion of the additional sexual harassment claim, the court held that "the allegation in the supplement, though sparse, identified the type of discrimination complained of, . . . and an approximate time period, and thus is minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement." *Id. citing* 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.12(b); *see also Ingels v. Thiokol Corp.,* 42 F.3d 616, 625 (10th Cir.1994).

## B. Additions to Original Charge

■ When a plaintiff seeks judicial relief for incidents not listed in her original charge to the Equal Employment Opportunity Commission, "the judicial complaint nevertheless may encompass *any discrimination like or reasonably related to the allegations of the . . . charge,* including new acts occurring during the pendency of the charge." *Seymore v. Shawver & Sons, Inc.,* 111 F.3d at 799 (emphasis added) *quoting Brown v. Hartshorne Pub. Sch. Dist. # 1,* 864 F.2d 680, 682 (10th Cir. 1988).

> Where an alleged retaliatory action occurs after the filing of a charge with the Equal Employment Opportunity Commission, the retaliatory action is reasonably related to the charge. However, where a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge.

*Seymore,* 111 F.3d at 799. In *Seymore,* the court held that the alleged retaliatory discharge did not reasonably relate to the charge because the plaintiff was aware of her termination and the alleged retaliation occurred prior to the filing of the charge with the E.E.O.C. *Id.* at 800.

## C. Retaliation Claim Under the PDA

■ In the case at bar, although plaintiff did not mark each box, defendant cannot ignore the allegations raised in materials submitted to the UALD. Defendant appears to have been fully apprized of the plaintiff's claims by way of the plaintiff's responses in the general intake questionnaire to the UALD;[5] and a supplemented letter and affidavit sent to the UALD and defendant.

On March 11, 2001, plaintiff's attorney sought to resolve the matter in a letter to defendant asking for a reasonable accommodation and return of plaintiff's job. On June 6, 2001, plaintiff sent a letter requesting additional charges based upon the submitted Affidavit of plaintiff (received by the UALD on June 8, 2001). That affidavit contained statements by plaintiff to establish sufficient factual assertions to show retaliation as to the PDA cause of action.

Unlike plaintiff's ADA claim, plaintiff's PDA claim puts forth sufficient facts to withstand summary judgment. Plaintiff put forth facts regarding her termination in her initial filing with the UALD and then followed up with additional detailed statements in her supplemental material regarding her retaliation claims. Additional facts that occurred after plaintiff's original filing with the UALD also raise

---

5. On January 26, 2001, as a result of being pregnant, I gave a doctor's note to my supervisor stating that I was restricted from lifting no more that 20 pounds. Later I was told by management that since I could not perform the lifting required, they had to let me go. I complained and I was offered general leave (6 months), but I had to reapply after that time period. Other employees offered to trade jobs with me, as an offer of accommodation but management refused. I believe I was treated differently because of my gender and because I'm pregnant. Notice of Charge of Discrimination March 14, 2001.

concerns that there was possible retaliation. Defendant appears to have made a minimal attempt to offer plaintiff a resolution after she made a complaint internally to the defendant, and again later in settlement negotiations with plaintiff's attorney, but this included a lower paying job without benefits for ninety days without any bridge or protection concerning her benefits. Surely, defendant had to be aware that benefits would be of the utmost concern to an expecting mother, and defendant may not have acted in the best faith in this regard. In any event, these alleged acts raise considerable material fact issues that need to be resolved by a fact finder.

Plaintiff's factual allegations in the initial Notice of Charge, later supplements to the UALD,[6] and the combination of all of the facts in this case gave the defendant the minimum sufficient notice required under *Gunnell* in regards to plaintiff's PDA retaliation claim. Certainly the initial factual allegations, along with the undisputed and disputed actions that took place *ab initio* in this case, sufficiently raised the issue of PDA retaliation and that this retaliation is reasonably related to plaintiff's initial complaint.

Accordingly, it is hereby

ORDERED, that defendant's Motion for Summary Judgment on plaintiff's claim of Discrimination in violation of Title VII of the Civil Rights Act of 1964 and Pregnancy Discrimination Act is DENIED; it is

FURTHER ORDERED, that defendant's Motion for Summary Judgment on the plaintiff's claim of Discrimination in violation of the Americans with Disabilities Act is GRANTED; it is

FURTHER ORDERED, that defendant's Motion for Summary Judgment on plaintiff's claim of Retaliation in violation of the Americans with Disabilities Act is GRANTED; it is

FURTHER ORDERED, that defendant's Motion for Summary Judgment on plaintiff's claim of Retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act is DENIED.

A further Status and Scheduling Conference, and a Pretrial Conference is set for August 31, 2004, at 10:00Am. Counsel should meet and submit to the Court an agreed upon form of Pretrial Order by August 24th, 2004.

---

**6.** E.g. plaintiff states in her Affidavit to the UALD that she was terminated after asking